```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION
```

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

    Petitioner,

v.                                Case No:  2:21-cv-719-JES-KCD

H.E. SUTTON FORWARDING CO.,
LLC, D/B/A TEX SUTTON
EQUINE AIR TRANSPORTATION,

    Respondent.
_____

## OPINION AND ORDER

This case comes before the Court on petitioner's Motion for Reconsideration, or Alternatively, Leave to File Second Motion for Summary Judgment (Doc. #32) filed on September 21, 2022. Respondent filed a Response in Opposition (Doc. #35) on October 12, 2022.

**I.**

This case began when Petitioner Travelers Property Casualty Company of America (Travelers) filed a Petition for Declaratory Relief with the Court, arguing it had no duty to defend or indemnify respondent H.E. Sutton Forwarding Co., LLC, doing business as Tex Sutton Equine Air Transportation (Tex Sutton) for injuries sustained by Antonio de Jesus Zepeda (Mr. Zepeda). (Doc. #1). Mr. Zepeda was operating a tractor trailer, in the course of

his employment, when he collided with an aircraft chartered by Tex Sutton.[1] (Doc. #1-2, ¶¶ 17-19; Doc. #24, ¶ 2; Doc. #24-1.) In August 2020, Mr. Zepeda and Victoria Zepeda filed a personal injury action, *Antonio DeJesus Zepeda v. H.E. Sutton Forwarding Co., LLC, et al.*, Case No. 20-CI-02602, Fayette Circuit Court Division, Commonwealth of Kentucky (the Underlying Action). (Doc. #24, ¶ 3; Doc. #1-2.) The Zepedas sought damages for bodily injury related to Tex Sutton's negligence and failure to maintain a safe premises when unloading and loading from the aircraft. (Doc. #1-2, pp. 7-12.)

Tex Sutton requested coverage for the damages sought in the Underlying Action pursuant to an "Excess Policy", which included Coverage A – Excess Follow Form Liability (Excess Policy) and Coverage B – Umbrella Liability.[2] Coverage A is subject to an Aircraft Liability Exclusion and an Air Products and Grounding Exclusion. (Doc. #1, ¶ 17; Doc. #8, ¶ 17; Doc. #24, ¶ 4; Doc. #24-2, pp. 42-43.) Travelers recognized that Tex Sutton was a covered insured under the Underlying Policy, but denied Tex Sutton coverage

---

[1] The aircraft was chartered by Tex Sutton, however, it is owned by Kalitta Charters, II, LLC. (Doc. #24, ¶ 2; Doc. #24-1.)

[2] The underlying insurance to the Excess Policy is Policy No. 3589-79-35 ECE (Underlying Policy), which was issued by Federal Insurance Company (Chubb) to Clark. (Doc. #24-2, p. 64.)

based upon the aircraft exclusions, and commenced the instant action. (Doc. #1, ¶ 11; Doc. #8, ¶ 11; Doc. #1-4, p. 9.)

In April 2022, Travelers filed a motion for summary judgment arguing that no coverage is available to Tex Sutton under the Excess Policy and that Travelers is entitled to judgment as a matter of law. (Doc. #24.)

Upon consideration of Travelers' motion for summary judgment, this Court found that denial of the motion was appropriate. (Doc. #31.) The Court agreed with Travelers that Tex Sutton qualified as a covered insured under Coverage A of the Excess Policy and that the Aircraft Liability Exclusion applies to the Underlying Action. (Id., pp. 9-12.) The Court, however, found there was merit to Tex Sutton's argument — that Travelers' interpretation of the Aircraft Liability Exclusion "would render the coverage illusory" since it would eliminate virtually all coverage as Tex Sutton's business involves the use of an aircraft. (Id., p. 12.) The Court noted that

> The intent of Coverage A is to provide excess liability coverage to the insured provided that the "underlying insurance" would apply to such damages. (Doc. #24-2, p. 11.) The Underlying Policy is not part of the record, so the Court cannot determine, as a matter of law, whether the policy is or is not illusory. For example, if the intent of the Underlying Policy is to cover Tex Sutton's liabilities arising out of the use of an aircraft, the Aircraft Liability Exclusion would completely negate any claim for excess coverage, rendering the policy "complete nonsense." Purrelli v. State Farm Fire & Cas. Co., 698 So. 2d 618, 620 (Fla. 2d DCA 1997) (citation omitted) (policy which purported to cover certain

3

>    intentional torts, but excluded intended acts, illusory). In such a situation, the insurance policy would be deemed ambiguous, and the exclusion ignored.

(Doc. #31, pp. 13-14)(footnote omitted.) Thus, the Court concluded that while the policy may ultimately not be illusory, Travelers failed to carry its summary judgment burden of showing there are no genuine issues which may be resolved as a matter of law. (Id., p. 14.)

Travelers now requests that the Court reconsider its Opinion and Order denying summary judgment, in order to correct the Court's failure to apply the terms of the Excess policy as written and its failure to properly apply Florida law, arguing it was clear error and will result in manifest injustice to Travelers unless corrected. (Doc. #32, p. 5.) More specifically, Travelers asserts that (1) the "intent" of the Underlying Policy is irrelevant to the resolution of Tex Sutton's "illusory coverage" argument, and (2) the Aircraft Liability Exclusion Does not "completely contradict" the insuring provision of the Excess Policy such that it would render the policy illusory. (Id., pp. 5-7.) In the alternative, Travelers requests leave to file a second motion for summary judgment to address the illusory coverage arguments that Tex Sutton first raised in its opposition to Travelers' first motion for summary judgment. (Id., p. 10.)

For the reasons set forth below, Travelers' motion to reconsider is denied, but its alternative request for leave to file a second motion for summary judgment is granted.

## II.

A non-final order may be revised at any time before the entry of a final judgment. Fed. R. Civ. P. 54(b). The decision to grant a motion for reconsideration is within the sound discretion of the trial court and may be granted to correct an abuse of discretion. Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 (11th Cir. 1993). "The courts have delineated three major grounds justifying reconsideration of such a decision: (1) an intervening change in controlling law; (2) the availability of new evidence; (3) the need to correct clear error or prevent manifest injustice." Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D. Fla. 1994).

"A motion for reconsideration should raise new issues, not merely readdress issues litigated previously." PaineWebber Income Props. Three Ltd. P'ship v. Mobil Oil Corp., 902 F. Supp. 1514, 1521 (M.D. Fla. 1995). The motion must set forth facts or law of a strongly convincing nature to demonstrate to the court the reason to reverse its prior decision. Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth., 814 F. Supp. 1072, 1073 (M.D. Fla. 1993); PaineWebber, 902 F. Supp. at 1521. "When issues have been carefully considered and decisions rendered, the only reason which

5

should commend reconsideration of that decision is a change in the factual or legal underpinning upon which the decision was based. Taylor Woodrow, 814 F. Supp. at 1072-73.

"A motion for reconsideration does not provide an opportunity to simply reargue - or argue for the first time - an issue the Court has already determined. Court opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." Grey Oaks Cty. Club, Inc. v. Zurich Am. Ins. Co., No. 2:18-cv-639-FtM-99NPM, 2019 U.S. Dist. LEXIS 161559, at *5 (M.D. Fla. Sep. 23, 2019) (citing Quaker Alloy Casting Co. v. Gulfco Indus., Inc., 123 F.R.D. 282, 288 (N.D. Ill. 1988) (quotations omitted)). Reconsideration of a court's order "is an extraordinary remedy and a power to be 'used sparingly,'" Santamaria v. Carrington Mortg. Servs., LLC, 2019 U.S. Dist. LEXIS 129682, 2019 WL 3537150, *2 (M.D. Fla. July 10, 2019) (citation omitted), with the burden "upon the movant to establish the extraordinary circumstances supporting reconsideration." Mannings v. Sch. Bd. of Hillsborough Cnty., Fla., 149 F.R.D. 235, 235 (M.D. Fla. 1993). Unless the movant's arguments fall into the limited categories outlined above, a motion to reconsider must be denied.

## III.

### A. Intent Of The Underlying Policy

In its motion for reconsideration, Travelers argues the "intent" of the Underlying Policy is irrelevant in determining

6

whether the application of the Aircraft Liability Exclusion renders Coverage A of the Excess Policy illusory. (Doc. #32, p. 3.) Travelers asserts that the Court's ruling as to "intent" is contradicted by the plain language of the Excess Policy, which provides excess liability coverage to the insured if the [Underlying Policy] would apply to such damages, "except with respect to any provisions to the contrary in this insurance." (Doc. #24-2, p. 11; Doc. #32, pp. 2-3.) Travelers acknowledges that the Excess Policy follows the insuring agreements of the Underlying Policy, which extends to bodily injury, but argues that the coverage provided by the Excess Policy is expressly limited by its own "provisions to the contrary," including the Aircraft Liability Exclusion. Travelers therefore concludes that the Excess Policy excludes coverage for any insured's liability arising from the use of an aircraft, irrespective of whether such coverage is available under any policy of underlying insurance, including the Underlying Policy. (Doc. #32, pp. 2-3.)

Tex Sutton responds that Travelers' argument, that the Aircraft Liability Exclusion "stands alone" because Coverage A of the Excess Policy states it provides the same coverage provided by the Underlying Policy "except with respect to any provision to the contrary contained in this insurance," begs the question – how can the Court determine if any provision of the Excess Policy is "contrary" to the Underlying Policy, and thus, whether the Policy

7

is illusory, when Travelers has not made the Underlying Policy part of the record. (Doc. #35, pp. 4-5.) The Court agrees.

The Florida Supreme Court has consistently held that "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect."[3] Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). See also Wash. Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 948 (Fla. 2013). By its terms, Coverage A of the Excess Policy is a "follow-form" policy and refers to and incorporates the Underlying Policy by stating

> 1. We will pay on behalf of the insured those sums, in excess of the "applicable underlying limit", that the insured becomes legally obligated to pay as damages to which Coverage A of this insurance applies, *provided that the "underlying insurance" would apply to such damages* but for the exhaustion of its applicable limits of insurance. . . .

---

[3] "In a contract action, a federal court sitting in diversity jurisdiction applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result." Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998); Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC, 601 F.3d 1143, 1148 (11th Cir. 2010). Florida courts apply the rule of lex loci contractus, which "provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." State Farm Mut. Auto. Ins. Co. v. Roach, 945 So. 2d 1160, 1163 (Fla. 2006). Travelers states (and Tex Sutton does not dispute) that the Excess Policy was issued and delivered to Clark, a Florida corporation, in Florida. (Doc. #24, p. 7, n.2.) Both parties also apply Florida law.

(Doc. #24-2, p. 11.) "A follow form policy is one that uses the definitions, coverage grants, exclusions, conditions, and other provisions of an underlying insurance policy." Fireman's Fund Ins. Co. v. Delores Kettleman, No. 05-61880-CIV-MORE, 2006 U.S. Dist. LEXIS 109552, at *5 (S.D. Fla. Sep. 7, 2006). In contrast, a "stand alone" policy, "unlike a follow form policy, exists independent of any other policy . . . [and] has its own coverage grant, definitions, exclusions and conditions." Id.

Here, reading the Policy as a whole, it is clear that the Excess Policy does not stand alone or exist independent of the Underlying Policy, as Coverage A of the Excess Policy follows form of the Underlying Policy. See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005). (Where "a policy provision is clear and unambiguous, it should be enforced according to its terms."). What is covered by the insuring provision of the Excess Follow-Form Policy cannot be determined without a thorough review of the Underlying Policy, to which it followed form. Thus, the Court finds that the "intent" of the Underlying Policy is relevant to determining whether the application of the Aircraft Liability Exclusion renders Coverage A of the Excess Policy illusory.[4]

---

[4] Travelers states that to the extent the terms of the Underlying Policy are relevant, all potentially applicable language of this Policy was quoted in Travelers' position letter, which is part of the record before the Court. (Doc. #32, p. 3.)

**B. Illusory Coverage**

Travelers argues that the Excess Policy cannot be considered illusory under Florida law unless the Aircraft Liability Exclusion completely eliminates all coverage thereunder, which Travelers asserts is not the case here. (Doc. #32, p. 3.) Specifically, Travelers contends that the Aircraft Liability Exclusion does not "completely contradict" the insuring provisions of the *Excess Policy* or eliminate coverage, but instead represents a "nibble or even a big bite" out of the insuring agreements because it simply excludes coverage for damages arising out of the use . . . of any aircraft . . . rented to any insured. (Id., p. 8.) Travelers argues, for example, that the Aircraft Liability Exclusion would have no bearing on a claim for damages had Mr. Zepeda fallen at Tex Sutton's premises, been assaulted by one its employees, been kicked by a horse, or defamed by Tex Sutton. (Id., p. 9.) Travelers therefore concludes that the Court could and should have determined, as a matter of law, that the application of the Aircraft Liability Exclusion did not render the Excess Policy

---

Even though Travelers has included in its "position letter" portions of the Underlying Policy that it deems to be applicable to the present matter, the Court finds that it is proper to examine the Underlying Policy in its entirety. See Farm Mut. Auto Ins. Co. v. Mashburn, 15 So. 3d 701, 704 (Fla. 1st DCA 2009) (a "single policy provision should not be read in isolation and out of context, for the contract is to be construed according to its entire terms, as set forth in the policy and amplified by the policy application, endorsements, or riders.").

illusory and granted summary judgment in favor of Travelers. (Id., p. 3.)

Travelers misapprehends what the Court stated in the Opinion and Order denying its motion for summary judgment as it only focusses on whether Aircraft Liability Exclusion does not "completely contradict" the insuring provisions of the *Excess Policy*, which ignores the issue raised by the Court – that without the Underlying Policy being part of the record the Court cannot determine whether the Excess Policy is illusory.  While Travelers has provided hypothetical examples of how it may be liable under the policy in order to demonstrate that the *Excess Policy* is not illusory, the Court cannot make such a finding because it must first determine whether underlying insurance, i.e., the Underlying Policy would apply to such damages.

Accordingly, the Court denies Travelers' motion for reconsideration.

IV.

In the alternative, Travelers requests leave to file a second motion for summary judgment directed to the illusory coverage arguments raised by Tex Sutton in opposition to the first motion for summary judgment. (Doc. #32, p. 10.) Travelers argues that permitting the parties to argue this issue on summary judgment furthers judicial economy as this is an issue of law to be decided by the Court. (Id.)

11

Tex Sutton responds that Travelers has already had two bites at the apple – through its motion for summary judgment and motion for rehearing, and failed each time to make the Underlying Policy part of the record. (Doc. #35, p. 6.) Tex Sutton thus argues that Travelers should not be given a third bite at the apple since there has been no new discovery, both motions are against the same parties, and Travelers chose to ignore the Court's instruction that it could not rule on these coverage issues without the Underlying Policy. (Id., p. 7.)

Travelers' request for leave to file a second motion for summary judgment concerns the interpretation of the Excess and Underlying Policies as to the issue of illusory coverage, which is a pure question of law to be decided at summary judgment stage. See Coleman v. Fla. Ins. Guar. Ass'n, Inc., 517 So. 2d 686, 690 (Fla. 1988) (Under Florida law, the interpretation of an insurance policy is a pure question of law to be decided at the summary judgment stage). In the interest of judicial economy, the Court therefore grants Travelers' request.

Accordingly, it is now

**ORDERED:**

1. Petitioner Travelers Property Casualty Company Of America's Motion for Reconsideration, or Alternatively, Leave To File A Second Motion For Summary Judgment (Doc. #32) is **DENIED in part and GRANTED in part.** The Court

12

**DENIES** Petitioner's motion for reconsideration, but **GRANTS** its request for leave to file a second motion for summary judgment.

2. Petitioner may file a second motion for summary judgment within **FOURTEEN (14) days** of this Opinion and Order.

3. If and when Petitioner files a second motion for summary judgment, Respondent may file a response within **TWENTY-ONE (21) days** from the date it is filed with this Court.

**DONE and ORDERED** at Fort Myers, Florida, this __2nd__ day of June, 2023.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record