UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

     Petitioner,

v.                     Case No:  2:21-cv-719-JES-KCD

H.E. SUTTON FORWARDING CO.,
LLC, D/B/A TEX SUTTON
EQUINE AIR TRANSPORTATION,

     Respondent.

_____

## OPINION AND ORDER

This case comes before the Court on petitioner's Second Motion for Final Summary Judgment (Doc. #44) filed on June 16, 2023. Respondent filed a Response in Opposition (Doc. #47) on July 17, 2023, to which Petitioner Replied (Doc. #51) on July 31, 2023. With permission of the Court, Respondent filed a Sur-Reply in Opposition (Doc. #54) on August 14, 2023. For the reasons set forth below, the motion is granted.

This action arises in the context of an insurance coverage dispute. Petitioner Travelers Property Casualty Company of America (Petitioner or Travelers) seeks a declaration that it does not owe a duty to defend or a duty to indemnify respondent H.E. Sutton Forwarding Co., LLC, D/B/A Tex Sutton Equine Air Transportation (Respondent or Tex Sutton) in a particular aircraft versus tractor

trailer accident case filed in state court.  (Doc. #1; Doc. #1-2.)  Travelers moves for summary judgment for a second time, arguing that there is no coverage for damages sought in the state lawsuit due to an Aircraft Liability Exclusion, and that the Exclusion is not "illusory." (Doc. #44.)

## I.

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own

affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson, 357 F.3d at 1260 (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts.")).

Under Florida law[1], the interpretation of an insurance policy is a pure question of law to be decided at the summary judgment stage. AIX Specialty Ins. Co. v. Members Only Mgmt., LLC, 793 F. App'x 1001, 1002 (11th Cir. 2019); Coleman v. Fla. Ins. Guar. Ass'n, Inc., 517 So. 2d 686, 690 (Fla. 1988). The Florida Supreme Court has consistently held that "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). See also Wash. Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 948 (Fla. 2013). Where "a policy provision is clear and unambiguous, it should be enforced according to its terms." Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005).

## II.

### A. Factual Background

The Court's Opinion and Order on Travelers' first motion for summary judgment (Doc. #31) sets forth the basic background facts[2]:

---

[1] This is a diversity action and the parties do not dispute that the challenged contract was issued and delivered in Florida, so Florida law controls. Westchester Gen. Hosp., Inc. v. Evanston Ins. Co., 48 F.4th 1298, 1302 (11th Cir. 2022); Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998). See also State Farm Mut. Auto. Ins. Co. v. Roach, 945 So. 2d 1160, 1163 (Fla. 2006).

[2] The background facts which were set forth in the Opinion and Order on Petitioner's first motion for summary judgment are

On March 12, 2020, Antonio de Jesus Zepeda (Mr. Zepeda) was injured when operating a tractor trailer in the course of his employment with Brook Ledge Horse Transportation. (Doc. #24, ¶ 1; Doc. #1-2.) Mr. Zepeda was picking up horses and equipment for his employer from an aircraft at Blue Grass Airport in Lexington, Kentucky. (Doc. #1-2, ¶¶ 12-14.) The aircraft – a Boeing 727-200 known as "Air Horse One" – was owned by Kalitta Charters, II, LLC (Kalitta) and chartered by Tex Sutton. (Doc. #24, ¶ 2; Doc. #24-1.) After picking up his load, Mr. Zepeda began exiting the premises and, due to an obscured view, collided with the aircraft's wing and sustained injuries. (Doc. #1-2, ¶¶ 17-19.)

On August 31, 2020, Mr. Zepeda and Victoria Zepeda (the Underlying Plaintiffs) filed a personal injury action, *Antonio DeJesus Zepeda v. H.E. Sutton Forwarding Co., LLC, et al.*, Case No. 20-CI-02602, Fayette Circuit Court Division, Commonwealth of Kentucky (the Underlying Action). (Doc. #24, ¶ 3; Doc. #1-2.) In the Underlying Action, the Underlying Plaintiffs seek damages from Tex Sutton for negligence; negligent hiring, retention, entrustment, supervision and training; negligent infliction of emotional distress; and gross negligence, willful or wanton misconduct, malice and recovery of punitive or exemplary damages.

Relevant to this lawsuit is an Excess Follow-Form and Umbrella Policy (Excess Policy) issued by Travelers to Clark Aviation Corporation ("Clark") for a period of May 21, 2019 through May 21, 2020. (Doc. #24, ¶ 4; Doc. #24-2.) The Excess Policy includes two separate coverage parts, Coverage A – Excess Follow-Form Liability and Coverage B – Umbrella Liability. (Doc. #24-2, pp. 11-13.)

. . .

The underlying insurance to the Excess Policy is Policy No. 3589-79-35 ECE (Underlying Policy), which was issued by Federal Insurance Company (Chubb) to Clark. (Id. p. 64.) On February 25, 2021, Tex Sutton requested coverage under the Underlying Policy and the Excess Policy for

---

either undisputed or read in the light most favorable to Respondent as the nonmoving party.

the damages sought in the Underlying Action. (Doc. #1, ¶ 17; Doc. #8, ¶ 17.) Chubb agreed to defend Tex Sutton under a reservation of rights. (Doc. #24, ¶ 14, Doc. #28, ¶ 8.) Travelers, also reserving its rights, recognized that Tex Sutton was a covered insured for purposes of Coverage A because Tex Sutton was a covered insured under the Underlying Policy, but advised Tex Sutton that coverage was barred based on the aircraft exclusions. (Doc. #1, ¶ 11; Doc. #8, ¶ 11; Doc. #1-4, p. 9.)

(Id., pp. 3-7.)

**B. Procedural Background**

On September 28, 2021, Travelers filed a Petition For Declaratory Relief with the Court pursuant to 28 U.S.C. § 2201. (Doc. #1.) Respondent filed their Answer (Doc. #8) on January 25, 2022. Travelers moved for summary judgment on April 28, 2022, arguing that no coverage for damages sought in the Underlying Action is available to Tex Sutton under the Excess Policy and that Travelers is entitled to judgment as a matter of law. (Doc. #24.) Upon consideration of Travelers' motion for summary judgment, this Court found that denial of the motion was appropriate. (Doc. #31.) The Court agreed with Travelers that Tex Sutton qualified as a covered insured under Coverage A of the Excess Policy and that the "Aircraft Liability Exclusion" applied to the Underlying Action. (Id., pp. 9-12.) The Court, however, found there was merit to Tex Sutton's argument — that Travelers' interpretation of the Aircraft Liability Exclusion "would render the coverage illusory" since it would eliminate virtually all coverage as Tex Sutton's business

6

involves the use of an aircraft. (Id., p. 12.) The Court noted that

> The intent of Coverage A is to provide excess liability coverage to the insured provided that the "underlying insurance" would apply to such damages. (Doc. #24-2, p. 11.) The Underlying Policy is not part of the record, so the Court cannot determine, as a matter of law, whether the policy is or is not illusory. For example, if the intent of the Underlying Policy is to cover Tex Sutton's liabilities arising out of the use of an aircraft, the Aircraft Liability Exclusion would completely negate any claim for excess coverage, rendering the policy "complete nonsense." Purrelli v. State Farm Fire & Cas. Co., 698 So. 2d 618, 620 (Fla. 2d DCA 1997) (citation omitted) (policy which purported to cover certain intentional torts, but excluded intended acts, illusory).

(Id., p. 14.) In sum, the Court found that while the Policy may ultimately not be illusory, Travelers failed to carry its summary judgment burden of showing there are no genuine issues which may be resolved as a matter of law. (Id.)

On September 21, 2022, Travelers filed a Motion for Reconsideration, or Alternatively, Leave to File Second Motion For Summary Judgment. (Doc. #32.) Travelers sought reconsideration of the Court's Opinion and Order denying summary judgment asserting that the "intent" of the Underlying Policy was irrelevant to the resolution of Tex Sutton's illusory coverage argument, and that the Aircraft Liability Exclusion does not "completely contradict" the insuring provision of the Excess Policy such that it would render the policy illusory. (Id., pp. 5-7.) In the alternative, Travelers requested leave to file a second motion for summary

judgment to address the illusory coverage argument raised by Tex Sutton. (Id., p. 10.)   The Court denied Travelers' motion for reconsideration (Doc. #43, p. 11), but in the interest of judicial economy, granted its request for leave to file a second motion for summary judgment.

Petitioner moves a second time for summary judgment arguing that it is entitled to a declaration that it owes no duty to defend or indemnify Tex Sutton under Coverage A of the Excess Policy because the "Aircraft Liability Exclusion" does not render coverage "illusory." (Doc. #44, pp. 2-3.) Respondent Tex Sutton argues that Travelers has failed to carry its summary judgment burden of showing there are no genuine issues of fact which may be resolved as a matter of law regarding whether the coverage at issue is illusory. (Doc. #47, p. 1.)

**III.**

As noted above, Travelers' Excess Policy includes two separate coverage parts, Coverage A — Excess Follow-Form Liability and Coverage B[3] – Umbrella Liability.

---

[3] In its previous Opinion and Order on Travelers' first motion for summary judgment, the Court found Tex Sutton failed to address Travelers' argument that Coverage B did not apply to Tex Sutton because Tex Sutton was not listed as a "Named Insured" for purposes of Coverage B, and in doing so, waived any argument to the contrary. (Doc. #31, p. 5 n. 2.) While Travelers reiterates the same argument as to Coverage B in its second motion for summary judgment, Tex Sutton again offers no countervailing argument. Thus, the Court omits any discussion of Coverage B.

Coverage A of the Travelers Excess Policy provides:

**SECTION I - COVERAGES**
**A. COVERAGE A - EXCESS FOLLOW-FORM LIABILITY**

1. We will pay on behalf of the insured those sums, in excess of the "applicable underlying limit", that the insured becomes legally obligated to pay as damages to which Coverage **A** of this insurance applies, provided that the "underlying insurance" would apply to such damages but for the exhaustion of its applicable limits of insurance. If a sublimit is specified in any "underlying insurance", Coverage **A** of this insurance applies to damages that are in excess of that sublimit only if such sublimit is shown for that "underlying insurance" in the Schedule Of Underlying Insurance.

2. Coverage **A** of this insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance", except with respect to any provisions to the contrary contained in this insurance [emphasis added].

(Doc. #24-2, p. 11.)

Coverage A is subject to the Aircraft Liability Exclusion:

With respect to **COVERAGE A – EXCESS FOLLOW-FORM LIABILITY**, the following exclusion is added to **SECTION IV -EXCLUSIONS:**

**Aircraft**

Damages arising out of the ownership, maintenance, use or entrustment to others of any aircraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which

> caused the "bodily injury" or "property
> damage" involved the ownership, maintenance,
> use or entrustment to others of any aircraft
> that is owned or operated by or rented or
> loaned to any insured.

(Id., p. 42.)

The Underlying (Chubb) Policy that was issued by Federal Insurance Company to Clark and endorses Tex Sutton, as a named insured, provides general liability coverage as follows:

> **COVERAGES**
>
> Bodily Injury and Property Damage Liability Coverage
>
> Subject to all of the terms and conditions
> of this insurance, we will pay damages that
> the insured becomes legally obligated to pay
> by reason of liability:
>
> - imposed by law; or
> - assumed in an **insured contract**;
>
> for **bodily injury**[4] or **property damage**[5] caused
> by an **occurrence**[6] to which this coverage
> applies.
>
> This coverage applies only to such **bodily
> injury** or **property damage** that occurs during

---

[4] "Bodily Injury" is defined as physical "injury; sickness; or disease; sustained by a person, including death, humiliation, mental anguish, mental injury, sickness or disease that caused it." (Doc. #44-2, p. 56.)

[5] "Property Damage" means "physical injury to tangible property, including the resulting loss of use of that property . . . or "loss of use of tangible property that is not physically injured." (Doc. #44-2, pp. 61-62.)

[6] "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. #44-2, p. 60.)

10

the policy period.

. . .

Advertising Injury and Personal Injury Liability Coverage

Subject to all terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:

- imposed by law; or
- assumed in an **insured contract**;

for **advertising injury**[7] or **personal injury** to which this coverage applies.

This coverage applies only to such **advertising injury** or **personal injury**[8] caused by an offense

---

[7] "Advertising Injury" means "injury, other than **bodily injury**, **property damage**, **or personal injury**, sustained by a person or organization and caused by an offense of infringing, in that particular part of your **advertisement** about your goods, products or services, upon their: copyrighted **advertisement**; or registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title." (Doc. #44-2, p. 56)(emphasis in original.)

[8] "Personal Injury" means injury, other than **bodily injury**, **property**, **damage**, **or advertising injury**, caused by an offense of:

A. false arrest, false detention or other false imprisonment;
B. malicious prosecution;
C. wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of a dwelling, premises or room that such person occupies, if committed by or on behalf of its landlord, lessor or owner;
D. electronic, oral, written or other publication of material that:

  1. libels or slanders a person or organization (which does not include disparagement of goods, products, property or services); or

that is first committed during the policy
period.

. . .

(Doc. #44-2, p. 34)(emphasis in original)(footnotes added.)

The Underlying Policy also contains the following exclusions:

**BODILY INJURY/PROPERTY DAMAGE EXCLUSIONS[9]**

Aircraft, Autos Or Watercraft

This insurance does not apply to **bodily injury**
or **property damage** arising out of the
ownership, maintenance, use (use includes
operation and **loading** and **unloading**) or
entrustment to other of any:

- aircraft;

. . .

owned or operated by or loaned or rented to
any **insured.**

(Id., pp. 91-92)(emphasis in original.)

---

2. violates a person's right of privacy; or

E. discrimination, harassment or segregation based on a
person's age, color, national origin, race, religion
or sex.

(Doc. #44-2, pp. 60-61)(emphasis in original.)

[9] As amended by the "Exclusion — Non-Owned Aircraft"
endorsement. (Doc. #44-2, pp. 91-92.)

**IV.**

**A.   Duty to Defend Principles**

Since Travelers' "duty to defend [under Florida law] is separate and distinct from its duty to indemnify, and it is more extensive" the Court begins its analysis here.   Advanced Sys., Inc. v. Gotham Ins. Co., 272 So. 3d 523, 526–27 (Fla. 3d DCA 2019) (citation omitted). As the Eleventh Circuit has recently summarized:

> Under Florida law, "an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." Jones v. Fla. Ins. Guar. Ass'n, 908 So. 2d 435, 442-43 (Fla. 2005). The duty to defend is a broad one, broader than the duty to indemnify, and "[t]he merits of the underlying suit are irrelevant." Mid-Continent Cas. Co. v. Royal Crane, LLC, 169 So. 3d 174, 181 (Fla. 4th DCA 2015). We determine whether an insurer has a duty to defend its insured based only on "the eight corners of the complaint and the policy," id. at 182, and only as the complaint's alleged facts are "fairly read," Fun Spree Vacations, Inc., 659 So. 2d at 421. The "facts" we consider in evaluating the duty to defend come solely from the complaint, regardless of the actual facts of the case and regardless of any later developed and contradictory factual record. Jones, 908 So. 2d at 442-43. "Any doubts regarding the duty to defend must be resolved in favor of the insured," id. at 443, and "where a complaint alleges facts that are partially within and partially outside the coverage of an insured's policy, the insurer is not only obligated to defend, but must defend that entire suit," Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co., 696 So. 2d 907, 910 (Fla. 3d DCA 1997). But of course, because the lawsuit must be for something covered by the insurance policy, "the insurer has no duty to defend" when "the pleadings show the applicability of a policy exclusion." State Farm Fire & Cas. Co. v. Tippett, 864 So. 2d 31, 35 (Fla. 4th DCA 2003).

Travelers Indem. Co. of Conn. v. Richard Mckenzie & Sons, Inc., 10 F.4th 1255, 1261 (11th Cir. 2021). See also Westchester Gen. Hosp., Inc., 48 F.4th at 1302 (citing Keen v. Fla. Sheriffs' Self-Ins. Fund, 962 So. 2d 1021, 1024 (4th Fla. DCA 2007)("However, an insurer does not need to defend an insured if a policy exclusion applies.")).

### B. Illusory Coverage Principles

An insurance policy can, without creating a conflict or ambiguity, both provide coverage and exclude some things that might otherwise fall within that coverage. Cynergy, LLC v. First Am. Title Ins. Co., 706 F.3d 1321, 1327 (11th Cir. 2013). On the other hand, an insurance policy's coverage becomes illusory if it "grants coverage with one hand and then with the other completely takes away the entirety of that same coverage. Completeness is key. When limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory." Richard Mckenzie & Sons, Inc., 10 F.4th at 1265-66 (citing Warwick Corp. v. Turetsky, 227 So. 3d 621, 625 (Fla. 4th DCA 2017)(internal quotations omitted)(emphasis in original)). Put another way, a policy is illusory: (1) "only if a policy exclusion 'swallow[s] up' an insuring provision", or (2) when an exclusion "eliminates all——or at least virtually all——coverage in a policy." Zucker v. U.S. Specialty Ins. Co., 856 F.3d 1343, 1352 (11th Cir. 2017); Posada v. Aspen Specialty Ins. Co., No. 8:22-cv-1578-CEH-AAS, 2023

WL 2711538, 2023 U.S. Dist. LEXIS 55419, at *49 (M.D. Fla. Mar. 30, 2023).

If the policy is found to be illusory or ambiguous, it is resolved "by ignoring the exclusion." Zucker, 856 F.3d at 1352 (citing Tire Kingdom, Inc. v. First S. Ins. Co., 573 So. 2d 885, 887 (Fla. 3d DCA 1990)). "But if the policy's coverage and exclusion provisions do not negate one another, the coverage is not illusory, and there is no ambiguity, so the plain language of the exclusion controls." See Richard Mckenzie & Sons, Inc., 10 F.4th at 1265 (citing Warwick Corp., 227 So. 3d at 625-26).

In its Opinion and Order on Petitioner's first motion for summary judgment, the Court found that Tex Sutton qualified as a covered insured under Coverage A of the Excess Policy, and that the Aircraft Liability Exclusion applies to the Underlying Action (Doc. #31, pp. 9-11). Tex Sutton does not dispute that the Aircraft Liability Exclusion applies. Instead, it claims that this Exclusion is so broad that it renders coverage illusory because Tex Sutton's entire business involves one thing — the use of an aircraft for the transportation of horses. Therefore, the sole remaining issue before the Court is whether the coverage provided by the Underlying Policy and Coverage A of the Excess Policy is rendered "illusory" by the Aircraft Liability Exclusion, thus invoking Travelers' duty to defend or duty to indemnify.

**V.**

Travelers argues that while the Aircraft Liability Exclusion applies in this case, the Exclusion does not render the Excess Policy's coverage illusory because it does not "swallow up" an insuring provision nor does it "eliminate[] all——or at least virtually all——coverage in a policy"; rather, the Excess Policy (Coverage A) and the Underlying Policy provide potential coverage for a variety of damages outside the scope of the Exclusion.  (Doc. #44, p. 2; Doc. #51, p. 3.)  Plaintiff argues that under either type of illusory coverage, Travelers' motion for summary judgment fails.  The Court will address the parties' arguments in turn below.

### A. Whether The Aircraft Liability Exclusion "Swallows Up" An Insuring Provision

Travelers argues that application of the Excess Policy's Aircraft Liability Exclusion to the Underlying Policy does not completely "swallow up" coverage because there is a myriad of other claims within the broad insuring grant "for bodily injury or property damage" that do not arise out of the "ownership, maintenance or use" of an aircraft. (Doc. #51, p. 2.)  Tex Sutton, on the other hand, argues that the Aircraft Liability Exclusion's language – "damages arising out of the ownership, maintenance, use or entrustment to others of any aircraft" – is so broad that it "swallows up" the entire bodily injury coverage provision and

renders coverage illusory. (Doc. #47, pp. 12–13.)  Tex Sutton's argument is based on its theory that since it is in the business of transporting horses via aircraft, any claim for bodily injury would necessarily "aris[e] out of" the use of aircraft, and thus be barred under the Exclusion.

Tex Sutton's argument fails, though, because the Aircraft Liability Exclusion does not "swallow up" coverage. To render coverage illusory, the exclusion must "completely contradict the insuring provisions." Interline Brands, Inc. v. Chartis Specialty Ins. Co., 749 F.3d 962, 966 (11th Cir. 2014). If an exclusion does not "completely swallow" the insuring provision, the policy is not illusory, even if it is a significant exclusion. Warwick Corp.,227 So. 3d at 625.

While the Aircraft Liability Exclusion may exclude "damages arising out of the ownership, maintenance, use or entrustment to others of any aircraft . . . rented . . . to any insured" (including "loading and unloading") for coverage provided by the Underlying Policy for damages because of "bodily injury" and "property damage" caused by an "occurrence" (i.e., an accident), it does not swallow every claim under the insuring provision.  For example, as Travelers notes, the Policy covers — and the Aircraft Liability Exclusion does not negate coverage — for bodily injuries such as

slips and falls at Tex Sutton's leased premises[10], or property damage due to Tex Sutton's negligent maintenance of its leased premises. (Doc. #44, pp. 12-13; Doc. #51, p. 4.) See, e.g., AIX Specialty Ins. Co., 793 F. App'x at 1004 (a liquor liability exclusion in a general liability policy issued to a night club was a "significant exclusion" given the night club's business, but did not swallow up coverage); Goldberg v. Nat'l Union Fire Ins. Co., 143 F. Supp. 3d 1283, 1301-02 (S.D. Fla. 2015)(a professional services exclusion in a policy issued to a company offering banking services was not illusory because it provided coverage for claims not involving professional services); Md. Cas. Co. v. Smartcop, Inc., No. 4:11-cv-10100-KMM, 2012 U.S. Dist. LEXIS 141757, at *20 (S.D. Fla. September 21, 2012)(a computer software exclusion in a policy issued to a company whose primary responsibilities relate to providing computer software to its customers was not illusory). "[A]n insurance policy can both provide coverage and also exclude some things that might otherwise fall within that coverage. That's not a conflict. It's just an exclusion, and those are par for the insurance course." Richard McKenzie & Sons, Inc., 10 F.4th at 1265. Thus, even though the Aircraft Liability Exclusion may take "a

---

[10] The complaint in the Underlying Action alleges that Tex Sutton maintains a facility at Blue Grass Airport, which it leases from the Lexington-Fayette Urban County Airport Board. (Doc. #1-2, ¶ 10.)

nibble, or even a big bite, out of [coverage]," it does not swallow Tex Sutton's coverage whole. Id. at 1266.

### B. Whether The Aircraft Liability Exclusion "Eliminates All——Or At Least Virtually All——Coverage In A Policy"

The parties also disagree as to whether this case falls under the common law "illusory coverage" doctrine that the Eleventh Circuit has indicated is part of Florida's insurance law. Interline Brands, Inc. v. Chartis Specialty Ins. Co., 749 F.3d 962, 966-67 (11th Cir. 2014) (applying Florida law).   "In order for an exclusion to render a policy's coverage illusory it must eliminate all—or at least virtually all—coverage in a policy." Zucker, 856 F.3d at 1352, citing  Inerline Brands, Inc., 749 F.3d at 966-67) ("According to Interline, the Exclusion's broad scope reduces the coverage Chartis sold to Interline to a 'façade' . . . . Interline overstates the extent to which the Exclusion limits coverage. Even with the broad Exclusion, the policy still contains extensive coverage."); Great Am. E & S Ins. Co. v. End Zone Pub & Grill of Narragansett, Inc., 45 A.3d 571, 576 (R.I. 2012) ("We will deem an exclusion to an insurance policy illusory only when it would preclude coverage in almost any circumstance.") (quotation marks omitted); McGregor v. Allamerica Ins. Co., 449 Mass. 400, 868 N.E.2d 1225, 1228 (Mass. 2007) ("As long as an insurance policy provides coverage for some acts, it is not illusory simply because it contains a broad exclusion."); Point of Rocks Ranch, LLC v. Sun

Valley Title Ins. Co., 143 Idaho 411, 146 P.3d 677, 680 (Idaho 2006) ("An insurance policy's coverage is illusory if it appears that if any actual coverage does exist it is extremely minimal and affords no realistic protection to any group or class of injured persons.") (quotation marks omitted)).

The Aircraft Liability Exclusion negates a lot of coverage, but not "all—or at least virtually all—coverage." As set forth above, the Underlying Policy provides for damages resulting from bodily injury, property damage, advertising injury, and personal injury. Tex Sutton not only operates a business, but also occupies leased premises at the Blue Grass Airport. The Aircraft Liability Exclusion would not necessarily exclude claims based on premises liability, bodily injury or property damage sustained at Tex Sutton's offices, or injury resulting from trademark or tradename infringement, or defamation. Accordingly, the Travelers Policy is not illusory under Florida law. See Interline Brands, 749 F.3d at 967 (exclusion was not void for being against public policy where "[e]ven with the broad [e]xclusion, the policy still contains extensive coverage").

Accordingly, the Aircraft Liability Exclusion does not render the coverage under the Excess Policy illusory, and Travelers is entitled to summary judgment as to the same.

**VI.**

In its Complaint for Declaratory Judgment, Travelers sought judgment declaring its obligations to Tex Sutton under the Excess Policy, specifically its obligation to defend Tex Sutton in the Underlying Action and its obligation to indemnify Tex Sutton against loss for the damages sustained by Mr. Zepeda on March 12, 2020. For the reasons discussed below, the Court finds Travelers does not have a duty to defend or to indemnify Tex Sutton in the Underlying Action.

### A. Travelers' Duty to Defend Tex Sutton In the Underlying Action

Since the Aircraft Liability Exclusion does not render the coverage provided by the Excess Policy illusory as a matter of Florida law, "the plain language of the [E]xclusion controls", Richard Mckenzie & Sons, Inc., 10 F.4th at 1265 (citing Warwick Corp., 227 So. 3d at 625-26), and is applicable to the Underlying Action.   Travelers thus has no duty to defend Tex Sutton in the Underlying Action.   See Richard Mckenzie & Sons, Inc., 10 F.4th at 1261 (citing Tippett, 864 So. 2d at 35) (The lawsuit must be for something covered by the insurance policy, "the insurer has no duty to defend" when "the pleadings show the applicability of a policy exclusion.")).

**B. Travelers' Duty To Indemnify Tex Sutton Against Loss For The Damages Sustained By Mr. Zepeda**

"[T]he duty to defend is broad and based on the allegations in the complaint, the duty to indemnify is determined by the facts adduced at trial or during discovery." Pa. Lumbermens Mut. Ins. Co. v. Ind. Lumbermens Mut. Ins. Co., 43 So. 3d 182, 188 (Fla. 4th DCA 2010). See also Pub. Risk Mgmt. of Fla. v. Munich Reinsurance Am., Inc., 38 F.4th 1298, 1306 (11th Cir. 2022). Therefore, unlike the duty to defend, the trial court must look beyond the allegations in the underlying complaint to decide whether an insurer has a duty to indemnify. The duty to indemnify arguably may not become fully ripened until the merits of the underlying litigation are resolved. Aetna Ins. Co. v. Borrell-Bigby Elec. Co., 541 So.2d 139, 141 (Fla. 2d DCA 1989).

Courts in this circuit have overwhelmingly held that the question of an insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved, or the insured's liability is established, because unless and until that occurs there is no judgment to indemnify. See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Shaw Dev., LLC, 2:21-cv-658-SPC-NPM, 2021 U.S. Dist. LEXIS 202973, 2021 WL 4913357, *1 (M.D. Fla. Oct. 21, 2021) (duty to indemnify claim is unripe until state court case ends); Cont'l Ins. Co. v. Nationwide Ins. Co. of Am., 6:20-cv-1439-WWB-DCI, 2021 U.S. Dist. LEXIS 259064, 2021 WL 8894460, *5 (M.D. Fla.

Sept. 28, 2021) (entering a summary judgment finding that there is a duty to defend, and dismissing duty to indemnify claim without prejudice as premature until underlying litigation is resolved); AIX Specialty Ins. Co. v. Everett, 543 F. Supp. 3d 1321, 1333 (M.D. Fla. 2021) (declaratory judgment proceeding on duty to indemnify is premature until resolution of underlying litigation).

However, an exception to the prematurity of the indemnity issue arises when "the court can determine that the allegations in the complaint could *under no circumstances* lead to a result which would trigger the duty to indemnify." Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001) (emphasis added). See Amerisure Ins. Co. v. Walker, 11-61480-CV, 2011 U.S. Dist. LEXIS 132959, 2011 WL 5597325, *3 (S.D. Fla. Nov. 17, 2011) (no duty to defend or indemnify where the injured party stated in underlying complaint that he was an employee, triggering employer's liability exclusion); see also Scottsdale Ins. Co. v. GFM Operations, Inc., 789 F. Supp. 2d 1278, 1288-89 (S.D. Fla. 2011) (finding no duty to indemnify because employer's liability exclusion applied where there was no evidence in the record that injured party, who was operating a forklift, was on the premises as a patron rather than as an employee).

Here, the parties do not dispute the facts giving rise to the Underlying Action, namely, that Mr. Zepeda was injured while operating a tractor trailer to pick up horses and equipment

unloaded from an aircraft chartered by Tex Sutton, when his truck collided with the aircraft's wing.  As this Court has found, the Aircraft Liability Exclusion applies to the Underlying Action and based upon the undisputed allegations in the underlying complaint there are "no circumstances" that "trigger [Travelers'] duty to indemnify." Northland Cas. Co., 160 F. Supp. 2d at 1360.

Accordingly, it is now

**ORDERED:**

1. Petitioner Travelers Property Casualty Company of America's Second Motion for Final Summary Judgment (Doc. #44) is **GRANTED.**

2. Petitioner has no duty to defend Respondent H.E. Sutton Forwarding Co., LLC, D/B/A Tex Sutton Equine Air Transportation in the underlying action, *Antonio DeJesus Zepeda v. H.E. Sutton Forwarding Co., LLC, et al.*, Case No. 20-CI-02602, Fayette Circuit Court Division, Commonwealth of Kentucky.

3. Petitioner has not duty to indemnify Respondent for the damages sustained by Mr. Zepeda on March 12, 2020.

4. The Clerk of the Court shall enter judgment in favor of Petitioner, terminate any pending deadlines, and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this __24th__ day of August, 2023.


                                       _____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Counsel of Record